1    DEAN MANES #224382    *RELATED DDJ*

2    SANTA ANA JAIL M-88

3    PO BOX 22003

4    SANTA ANA, CA 92702

FILED
CLERK, U.S. DISTRICT COURT

MAY 3 1 2022

CENTRAL DISTRICT OF CALIFORNIA
BY _EFE_    DEPUTY

5

6              UNITED STATES DISTRICT COURT

7              CENTRAL DISTRICT OF CALIFORNIA

8    DEAN MANES              ) CASE #

9              PLAINTIFF    ) COMPLAINT FOR DAMAGES

10   VS.                    ) PURSUANT TO 42 USC 1983

11   LOS ANGELES COUNTY     )

12   SHERIFF DEPARTMENT, ET AL )   **LACV22-3718-JVS(JEM)**

13              DEFENDANTS    )

14

15

16              **JURISDICTION:**

17   **1.** This court has jurisdiction under 28 USC 1331. The defendants are law

18   enforcement and were acting under the color of law during the incidents in this

19   complaint. Federal question jurisdiction arises pursuant to 42 USC 1983.

20

21              **VENUE:**

22   **2.** Venue is proper pursuant to 28 USC 1391 due to the incidents contained in this

23   claim happening in Los Angeles County, California, in this district, as well as

24   the plaintiff and defendants residing and/or working within LA County.

25

26              **PARTIES:**

27   **3.** Plaintiff, Dean Manes, Santa Ana, California.

DEAN MANES VS. LOS ANGELES COUNTY SHERIFF DEPARTMENT, ET AL

COMPLAINT 42 USC 1983

1   **4.** Defendant, Los Angeles County Sheriff Department, Los Angles, California.

2   **5.** Defendant, LASD Deputy Jensen, Lancaster, California.

3   **6.** Defendant, LASD Detective Epstein, Lancaster, California.

4   **7.** Defendant, Los Angeles County Fire Rescue, Lancaster, California.

5   **8.** All parties are law enforcement and were acting under color of law.

6                                 **STATEMENT OF FACTS:**

7   9. On November 4, 2019, I took several thousand dollars' worth of collectables to

8      A V Sports and Graphics, Lancaster, ca. These were high end baseball cards,

9      (one of them, for example, an exact duplicate sold at auction for $390,000) a

10     first edition Goose and Grimm in mint condition, several signed baseballs,

11     several mint condition signed baseball cards, and rare coins to name a few

12     things.

13  10.I was driven to AVSG by a woman named Angela Martinez. Upon arrival to

14     the store there were two other vehicles in the parking lot and nobody in sight.

15     The doors to the store were propped open.

16  11.When I entered the store there was nobody inside. I assumed the employees

17     were working in the back and so I stood in front of the stores surveillance

18     cameras and waited for somebody to notice me.

19  12.After approx. 2 minutes, two people came rushing from the rear of the store.

20     They came through a door in the back that had been closed. A woman, whom I

21     now believe to be Wanda Proctor, walked quickly down the aisle farthest to the

22     north and stopped near the front door. She picked up some jackets and

23     pretended to look at things on the shelves in front of her.

24  13. The man, store owner Raymond Kaecker, went to the checkout counter which

25     was directly in front of me.

1    14. Both Kaecker and Proctor were extremely nervous. At the time I thought that I

2        had caught them doing something they weren't supposed to be doing.

3    15. Kaecker and I began discussing why I was there. I stated that I wanted to sell

4        or auction off some of the things I had brought with me. I explained that I was

5        willing to take an extreme loss if I could get a deal done quickly.

6    16. Kaecker, was very argumentative. After several minutes of trying to negotiate,

7        I started to pack my stuff back into the box I had brought, and I said "Are you

8        an asshole to all your customers?" Kaecker immediately grabbed a handful of

9        my belongings and walked to the door and threw my stuff outside. Then

10       Kaecker turned around and hit me in my left temple with brass knuckles.

11       (Photos of my injuries are in the case file for Los Angeles County case

12       #MA077578).

13   17. I believed that the cameras were operating since it's a fairly high end store and

14       the way that I had entered the store and waited in front of the cameras before I

15       was noticed.

16   18. I told Kaecker that I was going to leave a poor yelp review (This was

17       mentioned in the subsequent arrest report) and then Kaecker tackled me

18       through several shelves (we are both big men) and he landed on top of me in

19       what's known as a full mount position, sitting on my chest, and wouldn't allow

20       me to leave the store for several minutes. I was quickly becoming lightheaded

21       and was afraid he would hit me again while my head was on the ground. I was

22       in fear for my life. After approx. 4 minutes, I talked Kaecker into getting off of

23       me and allowing me to leave the store.

24   19. I left most of my valuables inside the store as I was in fear for my life.

25   20. I exited the store and walked around the corner. I was attempting to call for

26       help but I was not thinking clearly and could not operate my phone.

21. LASD deputies arrived and I was pushed against the patrol car by deputy Jenson, and while he was searching me for weapons, I overheard the first 911 call on the radio. It was a woman calling 911 and a woman dispatch relaying to the deputies. It was reported by the woman caller as a robbery.

22. Less than 10 seconds later the female dispatch told the deputies that the store owner called, said he didn't want the cops there, and it was a "mutual combat".

23. I was placed in the back seat without handcuffs by Jensen. Paramedics from LA County Fire Rescue arrived, I believe from the station on 6th street west, Lancaster, CA. Jensen told the responding paramedics that if I needed care they could take me to the hospital as I was free to go. Paramedics began asking me questions, one of which was my name. Jenson heard me state my name, recognized it, ran me on the MDT, and arrested me for PRCS violation for not reporting to my agent of record on time.

24. Jenson opened the rear door of the car and placed me in handcuffs at that point. Jenson did not allow the paramedics to treat me further. The paramedics left without treating me, although I told them I had been hit with brass knuckles, had a head injury, and was covered in blood. (Pictures are available in the court file case #MA077578)

25. I told Jensen multiple times that I needed medical attention. I sat there in the patrol car for approx. 20-30 more minutes while Jensen took pictures of the items that were left there on the ground and my injuries.

26. After Jensen picked up the stuff that was on the ground, he drove to the front of AVSG.

27. Another deputy came to the patrol car. I asked him to grab the rest of my stuff that I had left inside of AVSG. He stated, "You're lucky you're getting this stuff."

28. I sat in the car in front of AVSG for approx. one hour. During this time, I could see several deputies watching a video on a small device, I believe a cell phone, and laughing.

29. Jensen got back in the car. He said I was being booked for robbery, burglary, assault, and vandalism. (I was later charged with burglary, vandalism, and battery.) I asked if they could get the rest of my stuff. He said "You have enough."

30. I asked Jensen about surveillance videos from inside AVSG and he said, "I saw you get your ass kicked but there isn't any videos any more. Not that anybody will ever see. We take care of our own."

31. Jenson starting driving me toward the Lancaster substation, not toward the hospital. I told him, again, that I needed medical treatment. He stated, "You had better make it quick when we get there. I don't have all day."

32. I was taken to Antelope Valley Hospital Medical Center (AVHMC).

33. When I spoke with the triage nurse, I informed her that I had been hit with brass knuckles and believed that I had a head injury. I was still covered in blood.

34. Jensen told the nurse that I was lying and would not let her treat me. The nurse went and got a doctor.

35. I told the doctor i was hit with brass knuckles. Jenson told her that I was lying and that I had just assaulted an old man. He told the doctor that I was fine and that I was trying to get out of going to jail. The doctor did not treat the injury although I told her that I had been hit multiple times with brass knuckles and was still covered in blood.

36. On November 4, 2019, later the night of the arrest, when I arrived at Twin Towers Correctional Facility, Inmate Reception Center, I reported the injury. I was given a CT scan, and they discovered an abnormality on my left temporal

1      lobe, where I was hit. I was initially diagnosed with a 10mm menginoma. I was

2      scheduled for an MRI and neurosurgery consultation.

3   37. On 11/19/2021, I had my preliminary hearing, case #MA077578. During this

4      hearing, Kaecker testified that:

5          a.  His surveillance system application wasn't working on his phone the day

6             of the incident.

7          b.  His surveillance system was operational, however it wouldn't work on his

8             phone.

9          c.  That his daughter usually handles the surveillance system.

10         d.  He was in the process of changing the system from a hard drive based

11            system to an online cloud system so he has no access to the surveillance

12            system the day of the incident.

13         e.  He was still trying to determine the amount of damages to the store.

14  38. I ordered the attorney that was representing me to immediately subpoena the

15     alarm and surveillance monitoring company used by AVSG.

16  39. On January 27, 2020, I was released on bond. After my release, I went to the

17     AVHMC emergency, explained the CT scan, and they did an MRI, confirming

18     the results. They told me to see neurosurgery department immediately.

19  40. In approx. February 2020, I hired private counsel, Michael Malak. I ordered

20     Malak to immediately subpoena surveillance company records. He

21     immediately pursued discovery and the surveillance records from AVSG.

22  41. In early 2020, Malak and I discovered that Kaecker was operating an illegal

23     operation to produce counterfeit US notes. In the rear of AVSG, Kaecker

24     cleans regular US $1 notes and reprints them into larger denominations.

25  42. If you look at the front of AVSG, the signs and advertisements take up the

26     whole front of the building, from suite A to suite D

27  43. Inside AVSG, there is a wall on the south side of the store at approx. suite B.

44. Inside the rear of suites C and D are where Kaecker houses his industrial cleaning equipment for the notes and the newspaper printing press he uses to reprint the notes.

45. On two occasions, as part of my defense strategy, Malak did "controlled buys" and purchased counterfeit US notes from Kaecker at AVSG. Malak kept possession of these notes, along with receipts, until such a time as I may need the evidence as part of my defense.

46. Kaecker operates a church that I believe he uses to launder this money.

47. Kaecker, AVSG, has a contract to supply uniforms to LASD deputies and LASD Explorers.

48. I believe that Kaecker and AVSG are in a criminal enterprise together and that LASD facilitated a criminal conspiracy against me with the intent of gaining an illegal conviction. In the minutes for case #MA077578, on June 29, 2020 a hearing was held without wither Malak or my knowledge. During this hearing my court was reassigned.

49. On June 30, 2020, while waiting for court in Lancaster, Malak came out of the courtroom and stated that he had been removed from the case and the court was assigned another attorney to represent me. Malak stated that he didn't know why.

50. Upon entering court I was taken into custody. I was assigned an attorney that had a conflict. This attorney was given discovery for my case so as to prevent Malak or myself form obtaining it. To this day I have not received discovery from any court staff for this case.

51. On August 19, 2020 I was released again on bond and immediately scheduled an appointment at UCLA neurosurgery.

52. I was rearrested April 24, 2021.

53. On or about September 21, 2021, I was seen by UCLA for MRI's. The MRI report states that I had, at the time of the MRI, a 12mm menginoma. It had grown 20% since the initial diagnosis.

54. I was released on bond October 1, 2021.

55. I went to live at a sober living facility, Swan Street, 6959 Swan Street, Ventura, CA. My intent was to begin getting my life in order and continue fighting the criminal charges against me.

56. I immediately called UCLA neurosurgery to schedule a follow up appointment, and in October 2021, I went to UCLA neurosurgery. I was told that they needed twice yearly MRI's due to the potential for a neurological event and that they needed to monitor my condition. Due to the location of the head injury on the left temporal lobe and subsequent diagnosis, it's clear the injury caused the growth and or aggravated it.

57. On or about October 14, 2021, The owner of Worldwide GPS, Rick (Last name unknown.) was contacted by LASD Major Crimes Division (MCD). LASD MCD ordered Rick to allow investigators to have a duplicate of my GPS ankle monitor battery.

58. On or about October 14, 2021, LASD MCD set up a phone line and contacted me stating that they were from my "GPS monitoring department". I was instructed to use the given phone number for contact with them regarding my GPS service. I was in continued contact with this LASD MCD phone number by call and text for several weeks until my arrest.

59. On or about October 14, 2021, My girlfriend, Kory McClung, was given a battery pack for my GPS ankle monitor that had been altered to contain a microphone listening device. McClung was given this device by LASD MCD. McClung switched my GPS ankle monitor battery pack without my knowledge. (During a recorded jail call here at Santa Ana Jail McClung states

1   that she destroyed the battery pack upon my arrest December 6, 2021 because

2   the device "Had something inside of it." )

3   60. On or about October 20, 2021, my AB-109 probation supervisory agent of

4   record, a female Deputy Probation Officer, DPO, (I forget her name, although

5   this can easily be checked.) was contacted by investigators from LASD. She

6   was told to contact me and force me to leave Swan St. so as to make it easier to

7   put a surveillance team following me.

8   61. During the above conversation DPO was also ordered to call and instruct me

9   to go to the wrong court on October 25, 2021, so as to make me in violation of

10   my conditions of bond by not appearing at the appropriate court and time.

11   62. On or about October 20, 2021, I received a call from DPO (I was driving to

12   work and in the car with two people from my sober living house. DPO stated

13   that I needed to pull over as she had "updated court information" that I needed

14   to write down.

15   63. DPO proceeded to tell me that I was to report to court in San Fernando court

16   on October 25, 2021. I told her that she was incorrect, and that I had verified

17   this with my bail company. She stated that she had "just checked the system"

18   and I would be in violation of my probation if I didn't report to SFV court on

19   October 25, 2021.

20   64. DPO further stated that I could not live at the sober living house anymore. I

21   told her that would mean I would be homeless. She stated that it didn't matter.

22   65. I appeared for court in San Fernando, per the instructions from DPO on

23   October 25, 2021. I went to the court clerk and was told that I had court in

24   Lancaster that day.

25   66. I obtained a copy of my parking receipt from SFV court and called the court

26   clerk in Lancaster.

1    67. On October 25, 2021, I arrived for court in Lancaster. During this hearing,

2        judge Chu stated on the record, "Yeah, something weird is going on. Mr.

3        Manes, I'm concerned with you. I'm concerned with your rights." He ordered

4        me back to court on December 6, 2021, because, as he stated, he wanted to

5        make sure my rights were intact. These conversations can be verified in the

6        court transcripts.

7    68. On or about December 3, 2021, I was contacted by LASD MCD while they

8        were presenting themselves as my GPS monitor. I was told that I had to pay

9        my GPS payment but that I could wait until after December 6, 2021.

10   69. On or about December 3, 2021, I was contact by Rick from Worldwide GPS.

11       During this conversation he stated that I owed Worldwide money for my GPS

12       service. I stated that I was in contact with the monitor and I was told that I

13       could wait until after court to pay. Rick stated that "those are not my people.

14       They're law enforcement agents. You're already in default on your payments.

15       They're lying to you." Rick went on to tell me that my payment was due

16       immediately or else I was going to have my bond revoked. He further

17       explained that LASD members had contacting Worldwide and ordered the

18       company to allow them to pretend to be my GPS monitor. This was done in an

19       attempt to orchestrate a violation of my terms of release to have me remanded.

20   70. Upon my arrival at court in Lancaster, CA on December 6, 2021, I was

21       arrested by LASD deputies and turned over to the FBI.

22   71. In or about December 2021, I began having symptoms. Dizziness and more

23       severe headaches. Since then, I began having extreme feelings of drunkenness,

24       neuropathy, heart problems and high blood pressure. None of these has ever

25       happened before.

1   72. In February 2022, I received part of my discovery documents for my federal

2        criminal charges from Deputy Federal Public Defender Dinah Manning,

3        whom, she states, received the documents from the government.

4   73. Inside of this discovery were several different versions of my arrest report

5        from the AVSG incident.  The documents that came from the AUSA included:

6        a. An altered/forged copy of the arrest report from November 4, 2019. There

7            were several paragraphs pertaining to the statements made by Kaecker

8            that were clearly different from the original arrest report.

9        b. Two different versions of the same supplemental report authored by

10           LASD detective Epstein, both of which are altered/forged versions of the

11           same report:

12            i.  One copy was authored "11/19/19" and filed by the "secretary" on

13               "11/21/19".

14            ii. The second copy is dated "12/28/19" and filed by the "secretary" on

15               "11/21/19". Obviously this is impossible to have a document

16               authored "12/28/19" and filed "11/21/19". Both of these documents

17               are altered from the original report authored by Epstein, and

18               therefore there are at least three versions of these documents

19               available.

20        c. The above mentioned supplemental reports were altered/forged in an

21           effort to corroborate the testimony of Kaecker on November 19, 2019

22           because:

23            i. During the testimony Kaecker stated that there was no surveillance

24               video.

25            ii. Also included with the discovery from the AUSA were two

26               versions of an "MO Factors" report that states that the surveillance

27               system at AVSG was "non operational" (sic) on November 4, 2019.

*COMPLAINT 42 USC 1983*

1        The original report that was filed states that there was an

2        operational surveillance system. This document was manufactured

3        to further support the perjured testimony of Kaecker.

4     iii.  The amount in damages claimed in the email to Det. Epstein, and

5        the original supplemental report stated there was approx. $13,000. I

6        instructed my assigned attorney to subpoena the insurance claim

7        records and victim restitution claim records. After those

8        instructions, the amount was altered/forged was changed to approx.

9        $2,000.

10    iv.  All of these documents are available as part of the court record and

11        from the US Attorney Office (USAO).

12  d.  One copy of the arrest report that was authored by Jensen that states that

13     there were four items admitted into evidence. "EV1-EV4"

14  e.  One copy of the altered evidence log authored by Jensen that states that

15     there four items admitted as evidence. "EV1-EV4". Item "EV4" is listed

16     as video graphic evidence.

17  f.  One version of the evidence log authored by Jensen. This log states that

18     the submitted evidence only has three items submitted. "EV1-EV3". This

19     document is clearly altered from the original by Jensen and Epstein. A

20     piece of paper was taped over the "EV4" from another document. At the

21     bottom you can see the stamp that was accidently copied over from

22     another document. It has the name of a sergeant that was not present nor

23     part of the investigation.

24  74. All of the above documents were versions of the original arrest and

25     supplemental reports altered by LASD and the above mentioned deputies in an

26     effort to further a conspiracy against me. The above documents, as well as the

1    Originals are part of the court
2        file in Los Angeles County Case
3    number MA077578, as well as
4    federal filings, The USAO, and
5    Malak.

6

7    75) Due to the fact that the USAO
8    and government has these documents
9    leads me to believe that these
10       matters are under federal
11    investigation.

12

13   76) I submitted copies of
14       these documents, along with
15       a declaration and a brief
16       about the incidents to the
17       court presiding over case #
18    MA077578. These documents,
19    along with the declaration by
20    defendant, were filed with
21       a request for evidentiary
22    hearing on 4/22/2022.

23

24

25

26

27

28

DEAN EDWARD MANES  V. LASD, ET AL
COMPLAINT 42 USC 1983

77) The original arrest report, Unit Report
Number 919-232T2-1124-263 1300hrs,
Was authored by Jensen and approved
by Sgt. Zenko, On 11/4/2019. The report
states:

    A) That I told Kaecker, "I'm going
    to give you a bad yelp review",
    after he hit me.

    B) Report fails to mention that
    deputies called medical aid for me.

    C) There was a surveillance system
    at AVSG and that it was operational.

    D) That four pieces of evidence
    were being submitted by Jensen,
    "EV1-EV4", EV4 Was listed as a
    video.

    E) There was a female witness who
    deputies failed to identify.

    F) Does not mention that I hit or
    attempted to hit Kaecker.

78) The original supplemental report to
the above URN, was authored by
Epstein, ~~approved~~ on 11/19/2019 1345hrs,
(Exactly the time Kaecker Was testifying)
approved by sgt Esswein, and entered
into CLETS by "secratary" "JJ" On
11/21/2019. It states:

DEAN EDWARD MANES V: LASO, ET AL.
COMPLAINT 42 USC 1985

1   A) Epstein contacted Kaecker for follow
2      up information.
3   B) Epstein had provided Kaecker with
4      his email, and Epstein immediately
5      recieves an email from "AVsports@
6      aol.com". This email contains
7      damage assessments for AVSG with
8      a value of approx ~~~~~~ $13,000.00.
9      The email contains photos that were
10     taken by Kaecker five days after
11     the incident, Kaecker states in the
12     ~~email~~ conversation with Epstein
13     that Kaecker was treated by a
14     doctor that diagnosed him with a
15     "boxers fracture".
16
17  79). supplemental report authored by
18     Epstein on "12/28/19 @ 1345hrs",
19     approved by Esswein, and submitted
20     to CLETS by secratary "JI" on
21     "11/21/19". It's obviously impossible to
22     have a report filed in CLETS on
23     "11/21/19" and authored on "12/28/19".
24     This report is a copy of the 11/19/19
25     supplemental that was forged/altered
26     with the following differences:
27        A) The date that it was authored
28        by Epstein is "12/28/19 @ 1345hrs".

DEAN EDWARD MANES   V. LASD, ETAL
COMPLAINT 42 USC 1983

B) Kaecker "consulted" with a doctor
and Kaecker was told that he may
have tendon damage. (This
contradicts Kaecker's testimony on
11/19/19. The purpose of this
alteration was because, on 11/19/19,
Judge Chu ordered Kaecker's medical
records, and those records show
that Kaecker never went to the
doctor. Epstein was trying to
cover up Kaecker's perjured testimony
as well as Epstein's original report.)

C) The email from AVsports@aol.com
~~~~~~ to Epstein stated the above
in regards to Kaecker's consultation
with a doctor and diagnosis of tendon
damage, as well as the email only
claiming approx $2,000 in damages.
(This alteration of the report was
done because I instructed my
attorney to subpoena Kaecker's/AUSG
insurance claims to see how much
was claimed in damages.)

80) supplemental report with the same
data as mentioned in 79.B, 79.C.
above, except that the date authored
by Epstein is "11/19/19 @ 1345 hrs".

DEAN EDWARD MANES V. LASO, ET AL
COMPLAINT 42 USC 1983

81) There are at least three versions of the supplemental authored by Epstein that were altered/forged with intent of covering up Kaecker's perjured testimony, the pursuit of an illegal prosecution against me, and there are characteristics of the documents that show the document in #78 above was first, the document in #79 above was second, and the document in #80 above came third.

82) A second version of the arrest report, URN 919-23272-1124-263 1300hrs, authored by Jensen on 11/4/19, that came from the USAO, was also altered/forged from the original. This second version states:

A) I told Kaecker AUSG was "... gonna burn nicely."
B) There was a surveillance system at AUSG but it was "non operational" (sic) on 11/4/19.
C) One paragraph of the report was changed to state there were only three pieces of evidence "EV1-EV3", although the last paragraph still says "EV1-EV4".

DEAN EDWARD MANES  V. LASO, ET AL
COMPLAINT 42 USC 1983

D) The evidence log was altered from the original and lists only "EV1-EV3". This document clearly had another page taped over the bottom half of the original to cover up "EV4". There's a stamp from a seargent that was not present or involved with the case. Sgt. Zenko's stamp was accidently covered up from the original. These alterations were done to cover up Kaecker's perjured testimony, as well as further the illegal prosecution against me.

E) On 11/4/19, I told Kaecker "This is what big businesses do? Fuck over the little guys?"

83) During the preliminary hearing for case # MA077578 on 11/19/19, Kaecker testified that:

A) Kaecker brought several pictures that he had taken approx a week before (so approx a week after the incident at AVSG). Two of these pictures were used as evidence during the preliminary hearing. Both show Kaecker's hand. These pictures clearly show bruising on his palm in the

DEAN EDWARD MANES  V. LASD, ETAL

COMPLAINT 42 USC 1983

1 Shape of brass knuckles and the top
2 of his hand show a bruise accross
3 the top of his hand shaped like
4 brass knuckles.
5  B) Kaecker states that he sought
6  medical attention and the doctor
7  told Kaecker he had a "boxer
8  fracture"
9  C) Judge Chu ordered medical records.
10 D) Kaecker states he hit me because
11  I started tearing up posters in
12  his store with my hands. (The
13  photos taken by LASD show not
14  a single torn up poster. The posters
15  in fact, are all in wood and/or
16  metal frames)
17 E) That I didn't hit him.
18 F) That I attempted to ~~his~~ hit him
19  and made a "glancing blow" and
20  that's why he attacked me.
21 G) That he hit me because I
22  purposely knocked over and broke a
23  glass case. (The LASD photos show
24  the case empty and intact)
25 H) The surveillance system was
26  operational, but "it wasn't working
27  that day." Judge Chu then asks
28  Kaecker, "was it working the day

DEAN EDWARD MANES   v. LASD, ET AL
COMPLAINT 42 USC 1983

1   before..?". Kaecker responds, "No. It
2   hadn't been working for a couple of
3   weeks."
4       I) Kaecker was switching from a
5       hard drive based surveillance
6       system to a cloud based system
7       and that was why the video
8       wasn't available. Kaecker stated
9       that he was doing the work
10      himself.
11      J) Kaecker's daughter handle's all
12      the online and surveillances stuff
13      because he didn't know how.
14      For AVSG.
15   K) The valuables I took to AVSG
16      were not worth anything.
17   L) That I wanted too much money
18      for my valuables.
19   M) That Kaecker took my stuff and
20      "set it outside".
21
22   84) Despite my requests, my stuff that
23      was left in AVSG was not returned
24      by LASD or Kaecker. The stuff
25      that Kaecker threw outside is
26      being held by LASD, whom refuses
27      to return it.
28

DEAN EDWARD MANES v. LASO, ETAL
COMPLAINT 42 USC 1983

85) LASD deputies and/or Kaecker kept
the majority of my valuables.

86) On 11/4/19, Jensen and the other
deputies that responded seen that
I needed emergency medical aid
because I had a head injury that
was bleeding, I was slightly
incoherent, and stumbling. The
deputies called for emergency
medical aid. As soon as paramedics
arrived, Jensen told them, with
several deputies present, that
no crime had been committed,
a report was not ~~being~~ being
filed, and that if I needed to
go to the hospital the paramedics
could take me, as I was free to
go. Once the deputies heard my
name, Jensen made the paramedics
leave.

87) There is an ongoing civil and
criminal conspiracy against ~~that~~ me
started on 11/4/19 when LASD deputies
heard me state my name to paramedics
and continues with my pending
criminal charges in MA077578. The

DEAN EDWARD MANES V. LASD, ET AL
COMPLAINT 42 USC 1983

1. following facts support this:
2. A) Every deputy in the department
3. heard dispatch state over the air
4. on 11/4/19 that Kaecker called
5. 911 and stated no crime had been
6. committed and he did not
7. want deputies at AVSG.
8. B) Deputies/dispatch state over the
9. air that I required emergency
10. medical aid.
11. C) All the deputies that had a radio,
12. heard the dispatches, and/or were
13. present at AVSG and allowed Jensen
14. to deny me medical aid and
15. charge me with crimes they knew
16. were not committed.
17. D) As well as the facts mentioned
18. in numbers 21-50 above, numbers
19. 57-65 above, numbers 68-69 above,
20. numbers 73-86 above, these
21. paragraph numbers support my claim
22. of a civil and criminal conspiracy
23. against me by LASD, Jensen, Epstein,
24. Zenko, Esswein, deputies that
25. responded on 11/4/19, Kaecker,
26. secretary "JJ", LA County Probation
27. Department, Worldwide GPS, Worldwide
28. owner Rick, as well as other

DEAN EDWARD MANES v. LASD, ET AL

COMPLAINT 42 USC 1983

1   unidentified coconspirators.
2
3   88) I have continuing and worsening
4   medical condition including heart and
5   blood pressure regulatory problems,
6   and periods, sometimes weeks
7   long, in which I can't think
8   clearly. medical staff has placed
9   me on heart and blood pressure
10  medication and am currently
11  waiting for radiology and
12  neurosurgery at outside facilities.
13
14  89) Per California and Los Angeles County
15  legal requirements, I have submitted
16  a government claim form to:
17      Executive officer, Board of
18  Supervisors, Attn: Claims, 500 West
19  Temple St, Rm 383, Los Angeles, CA
20  90012, by certified mail, USPS
21  Tracking # 7019 2970 0000 1110 4538.
22  The claim and statement was signed
23  for and accepted by "miguel medrano".
24
25          CLAIM I:
26  90) There is a continuing civil and
27  criminal conspiracy against me with
28  the intent to obtain an illegal

DEAN EDWARD MANES  V. LASD, ET AL
COMPLAINT  42 USC 1983

1| conviction against me by use of the
2| methods mentioned in paragraphs
3| 21-50, 57-65, 68-69, and 73-87
4| above and by the conspirators
5| mentioned in paragraph 87(D)
6| above, in violation of my 4th, 6th,
7| 8th, and 14th amendment rights.
8|
9| CLAIM II:
10| 91) On 11/4/19, LASD, Jensen violated
11| my 4th, 6th, 8th, 14th amendment
12| rights against unlawful arrest, search,
13| seizure, confinement to custody, denial
14| due process, and deliberate indifference
15| to my medical needs.
16|
17| CLAIM III:
18| 92) On 11/4/19, LA County Fire Rescue
19| violated my 8th amendment right
20| against deliberate indifference to my
21| medical needs.
22|
23| CLAIM IV:
24| 93) On 11/19/19, LASD, ~~Davis~~, Esswein,
25| Epstein violated my 4th, 6th, ~~8th~~, 14th
26| amendment rights by denial of due
27| process, unlawful confinement, by
28| knowingly and willingly falsifying

DEAN EDWARD MANES V. LASD, ET AL
COMPLAINT 42 USC 1983

1| arrest and supplemental reports.

2|

3|            CLAIM V:

4| 94) on 12/28/19, LASO, Epstein, Esswein

5| violated my 4th, 6th, 14th amendment

6| rights by denial of due process, unlawful

7| confinement by knowingly falsifying

8| arrest and supplemental reports.

9|

10|            CLAIM VI:

11| 95) on or about 10/14/21, LASO, violated

12| my 4th, 6th, 14th amendment rights by

13| denial of due process and illegal

14| electronic monitoring.

15|

16|            CLAIM VII:

17| 96) In october 2001, LASO, LA county

18| Probation, violated my 4th, 6th, 14th

19| amendment rights by denial of due

20| process, furthering a conspiracy.

21|

22| 97) Any other claim not listed in this

23| complaint that the court recognizes

24| based on the "STATEMENT OF FACTS"

25| in paragraph numbers 9-89 above

26| as I am uneducated in these

27| matters and the specifics of

28| constitutional law.

DEAN EDWARD MANES  V.  LASO, ET AL
COMPLAINT 42 USC 1983

1   Any claim allowed by state and/or
2   federal law based on my "Statement
3   of Facts" above that the court
4   recognizes and I failed to mention
5   due to my lack of legal education.
6   Any other Civil Rico or Civil Rights
7   Statute claims or Civil Conspiracy
8   claims as allowed by law.
9

10          REQUEST FOR RELIEF:
11  98) Compensatory damages, including
12  general, special, and/or punitive
13  damages, according to proof, and
14  allowed by law.
15

16  99) Court initiate a federal investigation
17  into the matters contained in this
18  claim.
19

20  100) Court immediately secure all
21  pertinent records mentioned in this
22  complaint, as well as any other
23  records the court deems, so as to
24  protect the integrity of these records
25  against further destruction and/or
26  alteration.
27

28  101) LASD, LA County Probation, LA County

DEAN EDWARD MANES  V. LASD, ET AL
COMPLAINT 42 USC 1983

1   Fire Rescue, sued in their official
2   capacities.
3
4   102) Jensen, Zenko, Epstein, Esswein,
5   sued in their individual capacities.
6
7   103) Court grant leave to amend complaint
8   to add unidentified claims and/or
9   defendants, at a later date.
10
11   104) Plaintiff requests a jury trial
12   on all issues raised in this complaint
13   it and where allowed by law and
14   pursuant to paragraph 97 above.
15
16   105) Assignment of counsel due to
17   my ongoing and worsening medical
18   condition and pursuant to my
19   attached "Request for Appointment
20   of Counsel Pursuant to 42 USC
21   1983".
22
23   106) Any other relief allowed by law
24   and the court may deem appropriate.
25
26   107) The court proceed with this
27   complaint along with my "Request
28   for Counsel Pursuant to 42 USC 1983"

DEAN EDWARD MANES V. LASD, ET AL
COMPLAINT 42 USC 1983

1   and   "Request To Proceed Without
2   Prepayment of Filing Fees With
3   Declaration In Support".
4
5   108) I, DEAN MANES, plaintiff in the
6   above entitled action, do hereby
7   reaffirm paragraphs 1—107 above,
8   and swear the above to be true
9   under penalty of perjury.
10
11        _DEAN MANES signature_
12        5/20/2022
13   DEAN MANES
14   PLAINTIFF IN PRO SE.
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEAN EDWARD MANES  V. LASD, ET AL
COMPLAINT 42 USC 1983



DEAN MANES
#224382
SANTA ANA JAIL
P.O. BOX 22003
SANTA ANA, CA
92702

CERTIFIED MAIL

7019 2970 0000 1110 3647

RETURN
SERVICE
REQUESTED

LEGAL MAIL
LEGAL MAIL
LEGAL MAIL
LEGAL MAIL

Santa Ana Jail Correspondence

U.S. District Court
Attn: PRO SE CLERK
255 E. TEMPLE ST. ste.# TS-13
Los Angeles, CA 90012

